Reversed and remanded for further proceedings consistent with this opinion.

683 A.2d 207

NATHAN R. SCHNITZER, PLAINTIFF–RESPONDENT, v. RUDOLPH F. RINDERER, JR., AND SANDRA RINDERER, DEFENDANTS–APPELLANTS, AND CHRISTINE R. DEHNZ, TAX COLLECTOR OF BEACHWOOD, AND BOROUGH OF BEACHWOOD, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted September 18, 1996—Decided October 15, 1996.

242

Before Judges KING, KEEFE and CONLEY.

*Dennis M. Gonski,* attorney for appellants (*Mr. Gonski,* on the brief).

*Erwin C. Schnitzer,* attorney for respondent Schnitzer (*Mr. Schnitzer,* on the brief).

*Hiering, Hoffman & Gannon,* attorneys for respondents Christine R. Dehnz and Borough of Beachwood (*Diana L. Anderson,* on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

Defendants Rudolph and Sandra Rinderer appeal a denial of their motion for summary judgment and a grant of plaintiff's cross-motion for summary judgment which sets aside a 1995 "Certificate for Redemption of Tax Sale" executed and recorded by defendant Christine Dehnz, tax collector for the Borough of Beachwood. The execution and recording of that certificate discharged a tax certificate lien possessed by plaintiff on property then newly acquired by the Rinderers. The discharge was based upon payment by the Rinderers of $34.25.[1] Plaintiff has contended, however, that prior to the second quarter of 1994, he and/or his predecessors-in-title had paid taxes on the property since 1969 totalling $8,342.33.[2] The summary judgment order, from which defendants appeal, fixes the amount of plaintiff's lien for redemption purposes at $14,177.34 (the $8,342.33 plus interest, we presume).

On appeal, the Rinderers contend that a strict construction of *N.J.S.A.* 54:5–79, as applicable to tax certificates the viability of which continues beyond twenty years by virtue of continued tax payments, requires a reversal and entry of judgment for them.[3]

---

[1] Pertinent herein, *N.J.S.A.* 54:5–54 permits the owners of property encumbered by a tax sale certificate lien to redeem it "at any time until the right to redeem has been cut off ... by paying to the collector ... for the use of the [tax certificate] purchaser, his heirs or assigns, the amount required for redemption...." *N.J.S.A.* 54:5–55 directs that upon receiving that amount, the tax collector "execute and deliver to the person redeeming a certificate of redemption which may be recorded...."

[2] Prior to 1969, the property taxes on the subject property had not been paid at least since 1916. In 1969, a tax certificate was sold by the Borough of Beachwood to Custer Construction Company, a corporation owned by plaintiff and his now deceased wife. The tax certificate was recorded in the Ocean County Clerk's office and assigned to plaintiff's wife in 1974. Plaintiff acquired his wife's interest in the certificate upon her death in 1990.

[3] Interestingly, the Borough and its tax collector have not joined in the appeal and argue no more than that plaintiff's lien was redeemed and properly discharged by the tax collector in 1995.

Pursuant to that statute, the statutory twenty-year period of limitation for tax certificate liens is tolled when the lien holder "establish[es] that all property taxes have been paid by him, his heirs or assigns in each year since the purchase of the certificate." Defendants contend that since plaintiff has not continued to pay the taxes since the second quarter of 1994, his lien is void pursuant to *N.J.S.A.* 54:5–79.

In our view, however, the critical inquiry in resolving the parties' dispute requires consideration of the statutory redemption procedures that we think the record, sparse though it may be, plainly shows were employed by both the tax collector and the Rinderers prior to the discharge of the tax certificate. If those procedures complied with the redemption statutes, the certificate was properly discharged in 1995 by the tax collector and defendants would be entitled to summary judgment. If not, plaintiff is entitled to proper redemption. Resolution of that issue, however, requires facts that are not sufficiently fleshed out in the present record. Finally, because the issues are peculiarly embedded in the tax statutes, we conclude the expertise and jurisdiction of the Tax Court is required. *See N.J.S.A.* 2B:13–2b.

Here are the facts as far as we can piece together and, since the matter was resolved on motions for summary judgment, viewed indulgently. *Brill v. Guardian Life Insurance Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). From the recording in 1970 of the tax certificate at issue, plaintiff and/or his predecessors-in-title continued to pay the property taxes. The record is not entirely clear, but it appears that at least since 1984, defendant tax collector had sent the tax bills to plaintiff and his wife, despite the fact that, typically, tax bills are sent to the owners of the property. *N.J.S.A.* 54:4–23, *N.J.S.A.* 54:4–64. *See In re West Jersey Grove Camp Ass'n v. City of Vineland,* 80 *N.J.Super.* 361, 365, 193 *A.*2d 785 (App.Div.1963); *Rainhold Holding Co. v. Freehold Tp.,* 14 *N.J.Tax* 266, 276 (1994), *aff'd sub. nom., United States Postal Serv. v. Township of Freehold,* 15 *N.J.Tax* 675 (App.Div.1995).

Sometime between November 1993 and November 1994, apparently following a quiet title action of some kind,[4] the property was acquired by the Rinderers' predecessors-in-title through various deeds obtained from the heirs of the original owner and from a sheriff's deed. At some point during that time period, the tax collector stopped sending the tax bills to plaintiff.

In January 1995 the Rinderers entered into a contract for sale of the property and a closing occurred in March 1996. Three tax searches were obtained for the Rinderers prior to closing. The first search, obtained in February 1995, reflected the existence of plaintiff's tax certificate lien and included a statement by defendant tax collector that:

> To the best of my knowledge the lien holder [plaintiff] has been paying the subsequent taxes. . . . This office has requested a notarized affidavit from the lien holder showing date of payments.

The second search, obtained on March 21, 1995, included an "amended" statement by the tax collector that:

> To the best of my knowledge, the lien holder has been paying the subsequent taxes. The owner [predecessor-in-title] has advised me that they have paid the second half of 1994 and the first quarter 1995 taxes. There has been no affidavit filed [by plaintiff pursuant to *N.J.S.A.* 54:5-60 [5]], this office has requested a notarized affidavit from the lien holder showing dates of payments.

On March 23, 1995, a scant two days later, a third search was obtained. The statement by the tax collector was again amended. This time she asserted:

-----

[4] If there was a quiet title action, it does not appear that plaintiff received notice of it or was joined. Since the issue is not before us, we express no view as to whether notice or joinder was required.

[5] *N.J.S.A.* 54:5-60 governs redemption of a tax certificate holder's lien and provides in pertinent part:

> [T]he amount required for redemption shall include all sums for subsequent municipal liens, and interest and costs thereon, actually paid by the holder of the tax title or his predecessor therein, together with interest on the amount so paid at the rate chargeable by the municipality, *provided the holder of such title shall have made and filed with the collecting officer an affidavit showing the amount of such payment, which affidavit may be taken before such officer.*
> [Emphasis added].

There has been no notarized affidavit filed. There was an affidavit filed (attached) by certificate holder, but it was not complete and was not notarized.

It is evident, then, that at all times leading up to the recording of the discharge of plaintiff's tax certificate lien, the parties, certainly at the least the tax collector, realized that plaintiff's lien at that time was still good despite its age. The focus was upon the amount needed for the Rinderers to redeem and whether plaintiff's "affidavit" was sufficient to establish that amount.

This "affidavit" refers to a form that sometime during late 1994 and early 1995, and obviously as part of the new owners' attempt to redeem the lien pursuant to *N.J.S.A.* 54:5–54, plaintiff was sent or obtained one on his own. It appears to be a form used by the tax collector's office and is referred to as a "statutory affidavit of tax sale certificate holder." This "affidavit" was then filled out by plaintiff and filed with the tax collector. It shows over $4,000 in taxes paid from 1988 to 1994 and, obviously to explain the missing amounts for the prior years, states that the tax bills prior to 1988 were lost in a fire.

The tax collector has asserted that the "affidavit" was unacceptable as unnotarized. We discern no place on the copy of the form that is in the record for either signature or notarization. There is an entry for "purchased by." Plaintiff placed his name in that entry. Further, we note that *N.J.S.A.* 54:5–60 simply refers to the filing of "an affidavit showing the amount of such payment, which affidavit may be taken before such officer." *N.J.S.A.* 54:5–79, moreover, contains no special method or manner for a certificate holder to demonstrate the required continued payments. Furthermore, when the tax collector wrote to plaintiff on September 8, 1994, she included a "paper" listing all the taxes on the property since 1969. That "paper" showed $8,342.33 in assessed taxes. Those taxes obviously had all been collected by the tax collector's office.

Thus, although the tax collector asserted an inability to know who paid the taxes, a fair reading of plaintiff's "affidavit" and other correspondence with the tax collector would suggest the tax

collector knew that the certificate holder had been paying the taxes since 1969, and knew that the total amount of taxes paid was $8,342.33. Moreover, plaintiff claims that when he received a subsequent letter from the tax collector in December 1994 questioning his "affidavit" and the validity of his lien, he returned the letter to the tax collector noting on the bottom that $8,342.33 was owed on the lien.

Nonetheless, on March 23, 1994, the tax collector sent to plaintiff a "voucher" for $34.25 for redemption of his lien. Plaintiff was requested to sign the voucher, endorse the tax sale certificate for cancellation, and return it to the tax collector's office. It does not appear that plaintiff complied. Rather by letter dated March 31, 1995, plaintiff, again, advised the tax collector that the amount of the lien was $8,342.33 and reminded her of his previously filed "affidavit." On March 28, 1995, however, the tax collector signed and recorded a certificate for redemption of tax sale for the amount of $34.25 pursuant to *N.J.S.A.* 54:5–55.

In entering summary judgment against defendants, the trial judge reasoned:

[W]hat sticks in my mind really is the idea that I'm Mr. Schnitzer and I've been paying these taxes all these years and I have a lien and somehow I've been cut out by the system because I'm not required apparently to be notified when somebody is either quieting title or assembling title, I don't know what term it is, and all of a sudden I find myself without anything. Now, under the former statute if I hadn't foreclosed within 20 years, I'd have no complaint and I would be the first to sign the judgment quieting that title and getting rid of that tax lien, but when the legislature gave that additional time, I don't think they gave it only to those people whose property was never the subject of interest by anyone else. In other words Mr. Schnitzer's property was observed by somebody, the property that he was paying taxes on, the McCracken property if you want to call it like that. Somebody says there's value in that property. If there were a valid mortgage on it, the mortgage would have been paid, but they don't want to pay the tax lien and I think that's wrong. *I think Mr. Schnitzer's rights continue because it is by operation of law that he's not paying the taxes on this property.* The law in the Borough is correct. Apart from whether or not this form was received from the Borough and the address was correct and so forth, I don't think that makes any difference to the Court, but what does make a difference to the Court is the quarter century of payments that were made and now should be forgotten and eliminated and I don't think that's proper. . . .

[Emphasis added].

The thrust of the trial judge's holding is that when a certificate holder who continues to retain a valid lien beyond twenty years by virtue of continuous tax payments becomes unable to do so when, as here, new owners resume those payments, the lien nonetheless survives *ad infinitum.*

We do not necessarily agree. Certainly the statute does not so expressly say. *And see Simon v. Deptford Twp.,* 272 *N.J.Super.* 21, 29, 639 *A.*2d 328 (App.Div.), *certif. denied,* 137 *N.J.* 310, 645 *A.*2d 139 (1994) ("[T]he rights of a purchaser of a tax sale certificate are entirely statutory and not equitably based."). Neither, however, do we agree with the defendant's view that strict construction of *N.J.S.A.* 54:5–79 permits property owners to automatically work a forfeiture of a tax certificate holder's lien simply by the owners resuming payment of taxes theretofore made by the lien holder. *Cf. Simon v. Township. of Voorhees,* 289 *N.J.Super.* 116, 121, 672 *A.*2d 1292 (App.Div.), *certif. denied,* 145 *N.J.* 373, 678 *A.*2d 714 (1996) ("[t]he Legislature cannot be found to have intended, without a clearer declaration, to empower a municipality [and property owner] to cancel a tax sale certificate based on the settlement [with the property owner] of a tax appeal.").

Prior to 1987, *N.J.S.A.* 54:5–79 provided for an automatic termination of a tax certificate holder's interests "at the expiration of 20 years from the date of sale, unless the purchaser, his heirs or assigns, shall, before expiration of that term, foreclose the right to redeem by notice or by a civil action in the nature of a proceeding in equity...." The twenty-year period was strictly enforced. *See e.g., DeHart v. Bambrick,* 177 *N.J.Super.* 541, 550, 427 *A.*2d 113 (App.Div.1981); *Gasorek v. Gruber,* 126 *N.J.Super.* 511, 515, 315 *A.*2d 706 (App.Div.1974); *Prickett v. Allard,* 126 *N.J.Super.* 438, 440–41, 315 *A.*2d 51 (App.Div.), *aff'd,* 66 *N.J.* 6, 326 *A.*2d 688 (1974); *Grasso v. Deiter,* 126 *N.J.Super.* 365, 368, 314 *A.*2d 608 (App.Div.), *aff'd,* 66 *N.J.* 5, 326 *A.*2d 687 (1974).

In 1987, the Legislature added the following provision to *N.J.S.A.* 54:5–79:

The limitation period of 20 years of this section shall not apply to a title and the certificate of tax sale acquired by a purchaser, his heirs or assigns when that purchaser, his heirs or assigns establish that all property taxes have been paid by him, his heirs or assigns in each years since the purchase of the certificate.

Thus, as of the first part of 1994, plaintiff's tax certificate, though purchased in 1969 and never foreclosed, was valid since he or his predecessors-in-title had continuously paid the taxes thereon. Indeed, the tax collector's dealings with plaintiff in 1994 and 1995 assumes the validity of his lien, as does the March 1995 request that he sign a cancellation thereof.

We do not hold with plaintiff's claim that he was absolved of the requirement of continued tax payments to preserve his lien, simply because he no longer received the tax bills. As we have said, ordinarily tax bills are sent to property owners, not certificate holders. Had there been no exercise by the Rinderers of their right to redeem pursuant to *N.J.S.A.* 54:5-54, and had plaintiff wished to protect his lien beyond the first quarter of 1994, he could have found out the amount due and remitted those payments or attempted to do so.[6] And we recognize that it is our function to interpret statutes consistent with their plain import where the terms are clear and unambiguous. *E.g. Munoz v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 145 *N.J.* 377, 384, 678 *A.*2d 1051 (1996). *And see Dehart, supra,* 177 *N.J.Super.* at 549, 427 *A.*2d 113.

But, simply put, the clear terms of *N.J.S.A.* 54:5-79 do not address the circumstances here. Those circumstances reflect an attempt by the new property owners in 1994, pursuant to *N.J.S.A.* 54:5-54, to redeem what was then a valid tax lien, and by the tax collector, pursuant to *N.J.S.A.* 54:5-55, to collect the redemption monies for the lien holder. *And see N.J.S.A.* 54:5-57 ("[t]he collecting officer shall . . . on receipt of the redemption money,

---

[6] Because the facts are not before us, we express no view as to whether, had plaintiff done this but the tax collector refused to accept his payments in light of the new owner's payments, that would have been sufficient to maintain his lien under *N.J.S.A.* 54:5-79.

mail notice thereof to the purchaser . . . and shall pay all redemption moneys to him or his assigns on his surrender of his certificate. . . ."); *Parlo v. Van Horn*, 27 *N.J.Super.* 64, 72, 98 *A.*2d 721 (Ch.Div.1953) ("[i]t would appear that the legislative intent was to designate the collecting officer . . . as agent of the purchaser . . . for the purpose of redemption. . . ."). The inquiry should have, thus, been upon the redemption statutes to determine whether plaintiff's lien was properly discharged upon a redemption by the Rinderers of $34.25.

One of the critical inquiries is the sufficiency of plaintiff's "affidavit." In connection therewith, *N.J.S.A.* 54:5–60 provides in part:

> [T]he amount required for redemption shall include all sums for subsequent municipal liens, and interest and costs thereon, actually paid by the holder of the tax title or his predecessor therein, together with interest on the amount so paid at the rate chargeable by the municipality, provided the holder of such title shall have made and filed with the collecting officer an affidavit showing the amount of such payment, which affidavit may be taken before such officer.

We take note of the tax collector's impression that plaintiff's "affidavit" was not valid because it was not notarized. But, as we have said, the form seems to be hers and we see no place for such notarization on the copy supplied to us. Further, we realize plaintiff's "affidavit" reflects only the amounts paid from 1988 to 1994, but it also explains that the amounts paid from 1969 to 1988 are not ascertainable because of a loss of records in a fire. The clear import of the "affidavit" though is that the taxes had been continuously paid by plaintiff and/or his predecessor-in-title. Moreover, whatever the deficiencies, at least by March 1995 when the discharge was filed, the tax collector knew plaintiff claimed to have paid all of the taxes since 1969 and that the amount of his lien was the $8,342.33. Had there been any question as to that and, given the fact that the Rinderers were seeking to eliminate the lien on the property by redeeming the certificate, they could have filed an action to resolve that dispute. *See Gonzales v. Harrington Co.*, 2 *N.J. Misc.* 311, 126 *A.* 38 (Ch.1923).

Whether there was sufficient compliance with the redemption procedures was, however, simply not addressed below. We do not fault the trial judge, for the action initially was one by plaintiff to foreclose. A subsequent amendment did raise the tax collector's discharge, and, thus, the redemption procedures as issues. But none of the parties focused on those issues either below on their respective motions for summary judgment or, indeed, before us.

Those are the critical issues raised by the particular circumstances here. They do not require an analysis of *N.J.S.A.* 54:5–79 where a tax certificate holder is precluded from continuing to pay taxes where the owners recommence those payments outside of the context of the statutory redemption procedures. Most assuredly, as of 1994 plaintiff's right to have his tax lien redeemed for the amounts he paid was still effective since the tax payments had continued to that time. Although the record as to what occurred during the critical time frame is sparse, it is sufficient enough for us to conclude that the facts were not " 'so one-sided' " that either party should have prevailed as a matter of law. *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

We thus reverse and remand for further proceedings consistent with this opinion. Because the critical dispute between the parties involves the application and construction of the tax laws, we exercise our original jurisdiction, transfer the entire matter to the Tax Court and remand to the Clerk of the Tax Court for appropriate assignment to a Tax Judge. *See N.J.S.A.* 2B:13–2b; *R.* 1:13–4(b). We do not retain jurisdiction.