RIMM, J.T.C.
This case involves the validity of a tax sale certificate sold by the municipality more than twenty years before an attempt to redeem the property from the tax lien. The matter was instituted in the Superior Court of New Jersey, Chancery Division, General Equity, Ocean County, under docket number F-7452-95, by way of a complaint filed on June 2, 1995 to foreclose the tax sale certificate. Nathan R. Schnitzer was the plaintiff and Rudolph F. Rinderer, Jr. and Sandra Rinderer were the named defendants.
On July 14,1995, plaintiff filed a “First Amended Complaint” in which he named Rudolph F. Rinderer, Jr. and Sandra Rinderer as defendants and added Christine R. Dehnz, Tax Collector of Beach-wood, and the Borough of Beachwood as defendants. In addition to the relief sought in the original complaint, plaintiff sought relief against the two additional defendants for damages and for an order declaring that a certificate of redemption for the subject tax sale certificate was a “nullity and of no force and effect.” All defendants filed answers seeking a dismissal of the first amended complaint.
Thereafter, defendants, Rinderer, filed a motion for summary judgment, with which motion defendants, Dehnz and Beachwood, joined. Plaintiff filed a cross-motion for summary judgment. Following a hearing on the motions on February 15, 1996, the Chancery Division judge entered an order fixing the amount, time, and place for redemption. The order provided that the amount required to redeem the premises from the tax lien' evidenced by the certificate is $14,174.34. Although the certificate of redemption is not referred to in the order, the effect of the order was to *139 nullify the certificate of redemption. On the same day, the judge also signed an order directing the payment of monies into court and granting a stay pending appeal. A timely notice of appeal was then filed, and a deposit in the sum of $14,174.34 was made with the Clerk of the Superior Court.
On appeal to the Appellate Division, defendants, Rinderer, contended that N.J.S.A. 54:5-79 required a reversal of the trial court’s judgment setting aside the certificate of redemption. The statute reads as follows:
The title of a purchaser at a sale shall cease and determine and the certificate of sale except as otherwise provided in this section shall be void at the expiration of 20 years from the date of the sale, unless the purchaser, his heirs or assigns shall, before the expiration of that term, foreclose the right to redeem it by notiee or by a civil action in the nature of a proceeding in equity and record the evidence thereof, as provided in this chapter; provided, however, that this act shall not apply to titles acquired by a municipality under certificates of tax sales purchased and held by it at tax sales conducted therein which titles so acquired and certificates of tax sales are hereby expressly exempted from said limitation period of 20 years. The limitation period of SO years of this section shall not apply to a title and the certificate of tax sale acquired by a purchaser, his heirs or assigns when that purchaser, his heirs or assigns establish that all property taxes have been paid by him, his heirs or assigns in each year since the purchase of the certificate.
[Emphasis added.]
The emphasized part of the statute applicable to the case now before me was amended by L.1987, c. 79, § 1, effective March 11, 1987.
By an opinion dated October 15, 1996, under docket number A-3815-95T3, the Appellate Division reversed and remanded the matter for further proceedings consistent with its opinion. The Appellate Division also exercised its original jurisdiction and transferred the matter to the Tax Court. Schnitzer v. Rinderer, 294 N.J.Super. 241, 683 A.2d 207 (App.Div.1996). Defendants, Rinderer, then petitioned the Supreme Court for certification, which petition for certification was denied. Schnitzer v. Rinderer, 147 N.J. 579, 688 A.2d 1054 (1997).
In its opinion, the Appellate Division said:
In our view, however, the critical inquiry in resolving the parties’ dispute requires consideration of the statutory redemption procedures that we think the record, sparse though it may be, plainly shows were employed by both the tax collector and the Rinderers prior to the discharge of the tax certificate. If those *140 procedures complied with the redemption statutes, the certificate was properly discharged in 1995 by the tax collector and defendants would be entitled to summary judgment. If not, plaintiff is entitled to proper redemption. Resolution of that issue, however, requires facts that are not sufficiently fleshed out in the present record.
Whether there was sufficient compliance with the redemption procedures was, however, simply not addressed below. We do not fault the trial judge, for the action initially was one by plaintiff to foreclose. A subsequent amendment did raise the tax collector’s discharge, and, thus, the redemption procedures as issues. But none of the parties focused on those issues either below on their respective motions for summary judgment or, in deed, before us____
Those are the critical issues raised by the particular circumstances here.
[Schnitzer v. Rinderer, supra, 294 N.J.Super., at 244, 251, 683 A.2d 207.]
After noting the critical issues, the Appellate Division went on to say that
[t]hey do not require an analysis of N.J.S.A 54:5-79 where a tax certificate holder is precluded from continuing to pay taxes where the owners recommence those payments outside of the context of the statutory redemption procedures. Most assuredly, as of 1994 plaintiffs right to have his tax lien redeemed for the amounts he paid was still effective since the tax payments had continued to that time.
[Schnitzer v. Rinderer, supra, 294 N.J.Super. at 251, 683 A.2d 207.]
Accordingly, the Appellate Division has concluded that,, since the taxes were paid without any break whatsoever in the continuing payment of the taxes, the lien remained valid and enforceable, requiring proper redemption by the property owner. Indeed, the latter issue, that of proper redemption, is the essential issue on which the Appellate Division focused and on which I must focus as the trial judge.
The matter was tried in the Tax Court on June 17, 1997. Plaintiff testified on his behalf and four exhibits were marked by plaintiff. Thereafter, all defendants rested without calling any witnesses. Following a discussion with counsel, I then called plaintiff back to the stand as the court’s witness. I also called defendant tax collector, Christine R. Dehnz, as the court’s witness. In addition, although no witnesses were called by defendants, Rinderer, they had twenty-six exhibits marked in evidence by agreement among counsel.
Custer Construction Company purchased tax certificate number 38-69 covering block L-37, lots 31 through 34, in the Borough of *141 Beachwood. The certificate is dated April 24, 1969 and was recorded in the Office of the Clerk of Ocean County in mortgage book 1556, page 8, on September 4, 1970. The amount of unpaid taxes indicated on the certificate is $23.54, and the total amount of the sale was $34.25, plus a premium of $5.00. The certificate indicates that the sale is subject to redemption on payment of the amount of the sale together with interest at 0%.
Plaintiff and his now deceased wife, Miriam Schnitzer, were the sole stockholders of Custer Construction Company, and the tax sale certificate was assigned by the corporation to Miriam Schnitzer. Following the death of Miriam Schnitzer, plaintiff became the owner of the tax sale certificate in accordance with the decedent’s last will and testament.
After the sale of the tax lien certificate which is the subject matter of this litigation, the Borough of Beachwood changed its method of designating tax blocks and lots from an alpha-numeric form of identification to a numerical form of identification. The block and lots formally known as block L-37, lot 31-34 were redesignated as block 10.37, lot 8.
The evidence also discloses that tax lien certificate number 38-69, the subject of this litigation, was erroneously recorded in the municipal records as certificate number 41-69. Thereafter a typographical error was also made indicating the certificate number as 47-69.
There is, however, no dispute among the parties as to the correct certificate number or as to the subject property now titled in the name of defendants, Rinderer. The change in lot numbers and the errors with regard to the certificate number have no impact on the issues in the matter, and all the information gathered by plaintiff and by the tax collector refers to the certificate which is the subject of this litigation.
Following the purchase of the tax sale certificate, all subsequent taxes up to and including the first half of 1994 were paid by Custer Construction Company, Miriam Schnitzer, or plaintiff based on tax bills sent to them. Plaintiff testified that he paid the *142 first half of 1994 taxes on the subject property, but did not receive a final bill for 1994. When plaintiff did not receive a final bill for 1994, he called the tax collector on the phone and asked her why he had not received the bill. The tax collector told plaintiff that a deed for the property had been recorded, that there was a transfer of ownership of the property, and that the 1994 final tax bill was sent to the new owner, Realty Ownership Ventures, Inc. In that regard, the following deeds were marked in evidence:
1) McCracken to Realty Ownership Ventures, Inc., a corporation of the State of New Jersey, care of 700 Boston Boulevard, Sea Girt, New Jersey 08750. The deed is dated November 5,1993 and was recorded in the Office of the Clerk of Ocean County on November 29,1993 in deed book 5113, page 340.
2) Steib to Realty Ownership Ventures, Inc., dated January 3, 1994 and recorded in the Office of the Clerk of Ocean County on January 6,1994 in deed book 5125, page 808.
3) Pornovitz to Realty Ownership Ventures, Inc., dated January 31, 1994 and recorded in the Office of the Clerk of Ocean County on February 7,1994 in deed book 5135, page 205.
4) Zapasnik to Realty Ownership Ventures, Inc. dated January 31,1994, was recorded in the Office of the Clerk of Ocean County deed book 5135, but the date and page of recording are not indicated.
5) Hooper to Realty Ownership Ventures, Inc., dated May 31, 1994 and recorded in the Office of the Clerk of Ocean County on June 7,1994 in deed book 5169, page 719.
6) A sheriffs deed from the undersheriff of Ocean County to Realty Ownership Ventures, Inc., dated November 11, 1994 and recorded on November 29,1994 in the Office of the Clerk of Ocean County in deed book 5222, page 87. Attached to this deed is an affidavit of consideration or exemption indicating that the transfer to Realty Ownership Ventures, Inc. is exempt from the realty transfer fee. The reason is: “(f) on partition.” All the deeds involve interests in the subject property.
*143 Plaintiff also testified that, prior to his conversation with the tax collector in 1994 when he brought to her attention the fact that he had not received a tax bill for 1994, he had a conversation with the tax collector concerning the tax sale certificate which is the subject matter of this litigation. The testimony is as follows:
Q. All right. Now prior to that conversation with Ms. Dehnz, did you have a conversation with her before that concerning filing any sort of document showing the taxes that you paid on that property?
A. Yes. I remember that we had an incident where this same company had, I believe, stolen one of my lots on Neptune Avenue, and I called Ms. Dehnz and asked her what I could do to prevent anything like this happening to my other lots, and she said that I should file a list with her of all the taxes paid, and I asked her if she had such a form, and she said she did, and she would mail it to me.
According to plaintiff, the tax collector then mailed him a one-page form by which he was to provide to the tax collector a list of all the taxes paid on the subject property. Plaintiff completed the form, indicating on it the block number, the lot numbers, the assessed owner, the date of the sale, the certificate number, the year of the tax sale, and the date on which the certificate had been recorded. He also indicated on the form the yearly total of taxes paid for the tax year 1988; the yearly total paid for the tax years 1990 through and including 1993; and the amount of taxes he had paid for the tax year 1994. The returned form also contained a notation in Mr. Schnitzer’s handwriting as follows: “Tax Bills Prior to 1988 Lost in fire.” Plaintiff testified that the one-page form that he received from the tax collector’s office was the only form that he received; that he never received a second page with the form sent to him by the tax collector; and that, since the one-page form he received did not require that it be notarized, he merely filled it out with the information he had and returned it to the tax collector. As a result of the receipt of this form, the tax collector knew that plaintiff claimed he had paid taxes on the subject property.
As a result of the conversation concerning the non-receipt of the 1994 tax bill, and at plaintiffs request, the tax collector sent him a handwritten statement listing payments of taxes for the subject property, by quarter, commencing with the second quarter of 1969 through and including the fourth quarter of 1994. In preparing *144 this list, the tax collector reviewed all of the original books relating to tax sale certificates. This list of taxes paid was sent to plaintiff at Post Office Box 150, Hillside, New Jersey 07205 with a letter from the tax collector dated September 8, 1994. The tax collector therefore also knew as of September 8, 1994, that all of the taxes for the subject property had been paid from 1969 through and including 1994.
The tax collector wrote to plaintiff again on December 14,1994. The letter is quoted in full.
Please be advised that the tax office is in the process of updating the computer systems inputting subsequent taxes paid by lienholders.
This office is in receipt of an affidavit from you for block 10.37, lot 8. The affidavit can not be used as it is not notarized, and it does not show the date the taxes were in fact paid.
If the property owner ever wishes to redeem this lien your affidavit is not valid for the reasons stated above.
If you have any questions concerning this matter please feel free to contact me.
Plaintiff testified that he never received the letter dated December 14, 1994 because it was addressed to 230 Hillside Avenue, Hillside, New Jersey 07205.
Plaintiff was then questioned about a letter dated March 23, 1995 addressed to him at the same address, 230 Hillside Avenue, Hillside, New Jersey 08725, which he did receive. This letter was from the tax collector advising plaintiff that the borough was in receipt of $34.25 to redeem his tax lien certificate. On the bottom of this letter, plaintiff wrote in his handwriting: “Due me $8,342.33 plus interest from 1969” and sent it back to the tax collector.
Plaintiff explained that, at the time of the purchase of the tax sale certificate in 1969, the office of Custer Construction Company was located at 230 Hillside Avenue, Hillside, New Jersey 07205. Plaintiff testified that he moved out of the office at 230 Hillside Avenue about 1980 and relocated his office to his home. At the same time, he rented a post office box in Hillside, New Jersey and “notified most of the people that I had dealt with that I had moved.” His mailing address was then Post Office Box 150, Hillside, New Jersey 07205.
*145 Plaintiff also explained that he sometimes receives letters addressed to 230 Hillside Avenue instead of being addressed to him at Post Office Box 150, Hillside, New Jersey 07205. His explanation is that he goes to the post office every day to pick up his mail at his post office box. If the clerk on duty is someone that knows him, he will get a letter which is incorrectly addressed to 230 Hillside Avenue. He further said some of the clerks do not know him, and a letter addressed to 230 Hillside Avenue, instead of Post Office Box 150, would be returned and not given to him.
The first time he saw the letter dated December 14, 1994 was after the present litigation had been commenced. I believe Mr. Schnitzer. His decorum in the courtroom and the content of his testimony when considered in the light of what makes sense, convinced me that he was a credible witness.
Important about the letter of December 14,1994 are: 1) the tax collector refers to the receipt of an affidavit from plaintiff although she claims that the affidavit was not notarized; 2) the tax collector is telling plaintiff that, if the property owner wishes to redeem, his affidavit is not valid; 3) the tax collector acknowledged that plaintiff had a valid lien on the property; 4) since the form sent to plaintiff was not sent in connection with a redemption, because no redemption was sought until 1995, but was sent for information purposes only, it is very likely, as plaintiff claims, that he only received one page; and 5) a later possible redemption was anticipated by the tax collector, which would involve the requirement that she obtain an affidavit from the lienholder at the time of redemption.
The conclusion that plaintiff had a valid lien on the property by way of his ownership of the tax lien certificate was a valid and proper conclusion. First, as indicated, the records of the tax collector’s office disclosed that taxes had been paid on the subject property from 1969 through and including 1994. Secondly, the records of the tax collector’s office indicated that tax bills for the tax years 1970 through and including 1978 were mailed to McCracken, care of Custer Construction Company, 230 Hillside Avenue, Hillside, New Jersey 07208. For the tax years 1979 *146 through and including 1983, the tax bills were mailed to Miriam Schnitzer, 230 Hillside Avenue, Hillside, New Jersey 07205. For the tax years 1984 through and including the tax year 1993, the tax bills were mailed to Miriam Schnitzer, Post Office Box 150, Hillside, New Jersey 07205. This is in accordance with plaintiffs testimony and the mailing information in the records of the tax collector.
The interrogatories served by plaintiff on defendants, Dehnz and the Borough of Beachwood, were marked in evidence. Interrogatory number one is as follows: “State the name and address of the person, firm or corporation to whom tax bills were sent concerning lots 31, 32, 33 and 34 in Block L-37, Borough of Beachwood and assessed to William McCracken, as owner, which property now known as lot 8 in Block 10.37, from 1969 through the first half of 1994.” Interrogatory number two is as follows: “State the names and addresses of the owner shown on said tax bills for said period of time.” Both of these interrogatories are answered by the following statement: “See attached Schedule A.” Attached to the interrogatories as Schedule A is information listing the names and addresses of the parties to whom the bills were sent as indicated. Attached to this opinion is that Schedule A to the answers to interrogatories.
In spite of the tax collector’s knowledge about the payment of taxes and the addresses to which the tax bills were sent, on March 23,1995, the tax collector sent plaintiff a letter telling him that the borough was in receipt of $34.25 for redemption of his tax lien. The letter enclosed a voucher and asked him to return it to her. He returned the letter and wrote on the bottom of the letter as follows: “Due me $8,342.33 plus interest from 1969.”
In addition, on March 31, 1995, plaintiff sent the tax collector a letter claiming that there was due to him the sum of $8,342.33 plus interest from 1969. In the letter he said that “[s]everal years ago an affidavit was filed showing the amount due on the above lot with the Township.” Of course, by that time, the tax collector had signed a certificate for redemption of the tax lien certificate on *147 March 28, 1995, which was subsequently recorded in the Office of the Clerk of Ocean County.
During her testimony, the tax collector indicated that she did not remember conversations with plaintiff in 1994. Accordingly, she did not contradict him in any way nor did she contradict his testimony that he had only received a one-page form on which he listed the taxes he paid and which one-page form he returned to her office.
The tax collector also testified about tax searches made by her office for the property which is the subject of the tax sale certificate in this matter. There were three searches generated by her office and sent to Mid-State Abstract Company. The first search was dated February 1, 1995. It shows the owner of the property as Realty Ownership Ventures, Inc., and it indicated that the 1994 taxes had been paid but that the first half of 1995 taxes were unpaid. This first search reflected the lien held by Mr. Sehnitzer. Under that portion of the search referring to “Certificates of Sale for Taxes, Assessments and (or) Other Municipal Liens,” there appears the following information:
Cert. No. 41-69, Date of Sale, April 22, 1969, Amount, $34.25, To Whom Sold, Custer Construction (Sehnitzer).
Interestingly enough, a printed portion of the search says: “Subsequent municipal liens paid by certificate holder for which affidavit has been filed pursuant to N.J.S.A. 54:5-60.” Under the heading of “Total Amount of Affidavit,” there appears the following typewritten information:
To the best of my knowledge the lien holder has been paying the subsequent taxes. This office has requested a notarized affidavit from the lienholder showing dates of payments.
Thereafter, the tax collector prepared a second search marking it “Corrected Search”. This search is dated March 21, 1995 and also refers to the Custer Construction (Sehnitzer) lien. Opposite the typewritten date on the search are the handwritten words: “See original search dated 2/1/95.” This second search contains the same information as the first search relating to the certificate of sale for taxes. In addition, there is typed on this search the following words:
*148 To the best of my knowledge the lien holder has been paying the subsequent taxes. The owner Realty Ownership Ventures, Inc. has advised me that they have paid the second half of 1994 and the first quarter of 1995 taxes. There has been no affidavit filed, this office has requested a notarized affidavit from the lienholder showing dates of payments.
Thereafter a third search for municipal liens was prepared by the tax collector’s office. It is dated March 23, 1995 and reads: “Corrected search. 2nd correction.” It also refers to the Custer Construction (Schnitzer) lien under Certificates of Sale for Taxes. It also contains on it the following information:
To the best of my knowledge the lienholder has been paying the subsequent taxes. The owner Realty Ownership Ventures, Inc. has advised me that they have paid the second half 1995 (sic) and the first % 1995 taxes. There has been no notarized affidavit filed. There was an affidavit filed (attached) by certificate holder, but it was not complete and was not notarized.
Attached to this third search is a photocopy of the one-page form that plaintiff sent to the tax collector’s office indicating his payment of taxes for 1988; his payment of taxes for 1990 through 1994; and his notation that “tax bills prior to 1988 lost in fire.”
In fact, the tax collector, in spite of her statements in the searches, did not request a notarized affidavit from the lienholder in connection with the redemption. After her letter of December 14, 1994, the tax collector never contacted plaintiff again until she sent him a voucher to effect the redemption for $34.25. She did not comply with the statutory redemption procedures. She did not afford the lienholder the opportunity to file an affidavit of the amount due under his lien at the time of the requested redemption.
As held by the Appellate Division, plaintiff’s lien was a valid and subsisting lien at the time of the attempted redemption in 1995. The tax collector obviously recognized the existence of the lien by her letter of March 23,1995 by which she advised plaintiff that the Borough of Beachwood was in receipt of $34.25 for redemption of his lien. In that letter she asked him to sign an enclosed voucher and return it to her for processing for payment. She also asked plaintiff to endorse the tax sale certificate for cancellation and to return it to her. No valid explanation was given at the time of the trial by the tax collector for her conclusion that the only amount she could determine due on the lien was $34.25. She attempted to *149 explain her decision of the total amount due by the fact that her records did not indicate who paid the taxes since the issuance of the certificate and because she did not have an affidavit from plaintiff indicating that he paid the taxes.
Her explanation defies credulity. By her own testimony, and in accordance with the statement prepared by her office, she knew that the taxes paid since 1969 amounted to $8,342.33, the exact amount which plaintiff ultimately claimed to be due to him. She also knew that plaintiff claimed that he had paid the taxes; and she knew the tax bills from 1970 through 1993 had been sent to plaintiff or his predecessors in interest in the tax lien certificate. Further, by a form letter dated August 30, 1993, addressed to Nathan Schnitzer, Executor, as the “property owner”, Dehnz notified plaintiff that the Ocean County Board of Taxation had entered a judgment reducing “your current assessment.” The letter further indicated the tax dollar calculations resulting from the reduced assessment. The totality of the documentary evidence in this case contradicts the tax collector’s testimony that she did not know plaintiff or his predecessors in interest had paid the taxes under the lien.
The determination that the lien could be discharged upon the payment of $34.25 is contrary to the statutes dealing with tax sales which require the payment of the entire lien and subsequent tax payments in full. For example, N.J.S.A 54:5-55, provides that “[t]he collecting officer on receiving payment in full shall, ... execute and deliver to the person redeeming a certificate of redemption which may be recorded with the ... County Clerk.” Lonsk v. Pennefather, 168 N.J.Super. 178, 402 A.2d 259 (App.Div. 1979), states that there can be no redemption from the lien of a tax sale certificate in the absence of the payment in full of all the taxes paid subsequent to the sale of the tax lien certificate. To the same effect is N.J.S.A 54:5-60, which provides that “[i]f the certificate of sale is not held by the municipality, the amount required for redemption shall include all sums for subsequent municipal liens, and interest and cost thereon, actually paid by the holder of the tax title or his predecessor therein____”
*150 Of course, N.J.SA 54:5-60 also provides that “the holder of such title shall have made and filed with the collecting officer an affidavit showing the amount of such payment, which affidavit may be taken before such officer.” It is on this provision in N.J.S.A 54:5-60 that the defendants rely in attempting to subvert plaintiffs lien. In fact, however, as indicated, there is no evidence before me that plaintiff was ever given an opportunity to comply with the statute. The tax collector had an obligation to comply with the statute. The tax collector had an obligation to specifically request an affidavit from the plaintiff at the time of redemption or to send him the affidavit form she wished used in connection with the redemption. In connection with the attempted redemption of the property from plaintifPs lien by the seller of the property, Realty Ownership Ventures, Inc., or the purchasers of the property, defendants, Rudolph F. Rinderer, Jr. and Sandra Rinderer, the tax collector did not obtain from any of them the full amount due on the lien; and she did not send an affidavit to plaintiff asking him to complete it and to return it to her in accordance with N.J.S.A 54:5-60. The very concern that plaintiff expressed to the tax collector about a prior incident apparently had no impact on her at all.
Notwithstanding her knowledge of plaintiffs interest in the property, she did not in any one of her three searches indicate the full amount due based on taxes paid subsequent to the sale of the lien. She knew of the lien; she knew of the amount of taxes paid; and she knew that bills had been sent to plaintiff or his predecessors in title. As a result of the tax searches, both the seller of the property, Realty Ownership Ventures, Inc., and the purchasers of the property, the defendants, Rinderer, were on notice that there was a tax lien on the property; that the lien had been sold by the municipality on April 22, 1969; and that subsequent taxes had been paid. The seller and the buyers simply ignored the existence of the lien of which they now had notice by virtue of three tax searches.
The tax collector took no action in connection with plaintiff’s tax lien certificate to effectuate proper redemption. The Appellate *151 Division’s direction was to determine if the redemption procedures employed by both the tax collector and the Rinderers prior to the discharge of the tax certificate complied with the redemption statutes, in which event the certificate was properly discharged. If the proper redemption procedures were not followed by the tax collector and the Rinderers, the plaintiff is entitled to proper redemption of his tax lien certificate.
Neither the tax collector nor the Rinderers employed any procedures to properly effectuate redemption of the property from the lien of plaintiffs tax sale certificate. On December 14, 1994, well before the settlement date of March 31,1995, between Realty Ownership Ventures, Inc. and the Rinderers, by the letter already quoted in this opinion, the tax collector advised plaintiff that his “affidavit” is not valid for the reasons stated above, namely that it had not been notarized. In the letter of December 14, 1994, the tax collector wrote “if the property owner ever wishes to redeem this lien your affidavit is not valid for the reasons stated above.” At that time, however, no redemption was being sought.
When in fact the redemption was sought following the request for tax searches in early 1995, the tax collector took absolutely no action whatsoever to collect the full amount due on the lien from the purchasers or the seller of the property nor did she take any action whatsoever in compliance with the statutory requirements for redemption by sending to plaintiff an affidavit for him to sign and to be returned to her so that there would be compliance with N.J.S.A. 54:5-60. Her procedures were arbitrary, capricious, and unreasonable in the extreme, effectively denying to plaintiff the total amount due to him under the tax lien certificate which he owned.
The focus on the issue of proper redemption results in the determination that plaintiffs lien is a valid, subsisting lien subject to proper redemption. I also set forth my view of N.J.S.A 54:5-79, which coincides completely with my understanding of the determination of the Appellate Division, and which elaborates on what I believe is the thrust, intent, and purpose of the statute.
*152 I conclude that N.J.S.A. 54:5-79 is remedial legislation to be liberally interpreted. ‘Where the Legislature’s intent is remedial, a court should construe a statute liberally. E.g., Brookins v. Murray, 131 N.J. 141, 149, 619 A.2d 583 (1993); Torres v. Trenton Times Newspaper, 64 N.J. 458, 461, 317 A.2d 361 (1974).” Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995).
To the extent that legislative history is available, the Committee Statements support the conclusion that the Legislature intended that the amendment to the statute be remedial, extending the life of a tax lien certificate to benefit the holder of the tax lien certificate.
The Assembly Municipal Government Committee Statement, dated December 11,1986, is as follows:
The Assembly Municipal Government Committee favorably reports Senate Bill No. 1366 (OCE).
This bill provides that the 20 year period within which the purchaser of a tax sale certificate must start a civil action to foreclose the equity of redemption of the prior owner, or suffer the loss of his title, shall not apply to a title and tax sale certificate acquired by a purchaser, his heirs and assignees when that purchaser establishes that all property taxes have been paid by him each year since the purchase of the certificate.
The Senate County and Municipal Government Committee Statement dated March 24,1986, is follows:
The Senate County and Municipal Government Committee reports favorably, and with amendments, Senate Bill No. 1366.
Senate Bill No. 1366 continues the title to real property acquired by a private purchaser under a certificate of tax sale when that purchaser, his heirs or assigns have paid all property taxes each year since the purchase of the tax sale certificate. Currently, the provisions of E.S. 54:5-79 provide that the right of a purchaser of a tax sale certificate to foreclose on the relevant property ceases after 20 years. That limitation, however, does not apply to tax sales certificates purchased by a municipality at tax sales held therein.
The bill, as amended, also clarifies that the provisions apply to existing certificates of tax sales which have not expired as well as certificates which shall be sold in the future.
This bill was prefiled for introduction in the 1986 session pending technical review. As reported and amended, the bill includes the changes required by technical review which has been performed.
Since the subject certificate was issued in 1969, twenty years would have expired in 1989, which was subsequent to the effective *153 date of the amendment of March 11, 1987. Consequently, the subject certificate was still alive and valid as of the date of amendment to the statute and the certificate holder had the right to continue -with the payment of taxes.
In this case, the lienholder continued to pay taxes after twenty years and until the owner commenced paying those taxes. There is nothing in the statute which provides for the owner to cut off the right of foreclosure by commencing the payment of taxes. The right of foreclosure can only be cut off by proper redemption. This is not a situation in which the lienholder abandoned the property nor his interest in the property. He did not abandon his intention to foreclose the tax lien certificate, and he paid the taxes due right up to the time the owner, without redemption, began to pay taxes.
If an owner, particularly an owner knowing of the payment of taxes by a lienholder, could come in and toll the statute by commencing the payment of taxes without notice to the lienholder and without attempting to redeem the property from the tax lien, including taxes paid by the lienholder for a period in excess of twenty years, the intention of the Legislature to continue the life of a lien beyond twenty years would be completely vitiated.
In addition to my conclusion that N.J.S.A. 54:5-79 is remedial legislation to be liberally interpreted, “[t]he statutory provisions respecting tax foreclosures are to be liberally construed as remedial legislation designed to encourage the barring of the right of redemption by action in the Superior Court and thereby secure marketable title to land. N.J.S.A 54:5-85; cf. Bron v. Weintraub, supra, 42 N.J. at 91-92, 199 A.2d 625.” Lonsk v. Pennefather supra, 168 N.J.Super. at 182, 402 A.2d 259. The whole thrust of tax lien foreclosures is to assist municipalities in the collection of delinquent taxes. “[T]he public policy in this state is to encourage tax sale foreclosure so as to assist municipalities in the collection of delinquent taxes. Bron v. Weintraub, 42 N.J. 87, 91, 199 A.2d 625 (1964); Kerr v. Trescher, 34 N.J.Super. 437, 441, 112 A.2d 598 (Ch.Div.1955).” Ibid. The failure of the tax collector to follow proper statutory redemption procedures is *154 contrary to the public policy of this State. It also fails to recognize the remedial nature of the legislation designed to encourage the barring of the right of redemption in the absence of compliance with proper redemption procedures.
Counsel for plaintiff will submit a proposed judgment under R. 4:42-l(c). The judgment shall provide, in appropriate language, that:
1. the certificate of redemption issued by the tax collector is null and of no force and effect;
2. March 30, 1998, between the hours of 10:00 A.M. and 3:00 P.M. at the office of the tax collector of the Borough of Beach-wood, 1600 Pine Wall Road, Beaehwood, New Jersey are the date, time, and place for redemption;
3. in default of redemption, the property owners are barred and foreclosed of any interest in the property;
4. the redemption is accomplished by payment to plaintiff of the sum of $14,177.34 on deposit with the Clerk of the Superior Court in accordance with the order of the Court of February 15, 1996, such payment from the Superior Court to include all interest accumulated since the deposit; and
5. the Clerk of the Superior Court is ordered to pay such sums to plaintiff forthwith.
ATTACHMENT
SCHEDULE A (to answers to interrogatories)
Block L-37, Lots 31, 32, 33, 34 AEA 10.37-8
YEAR BILLS MAILED TO ADDRESS
1969 William McCracken Unknown
1970 McCracken, M. % Custer Const. Co. 230 Hillside Ave., Hillside, NJ 07205
1971 McCracken, M. % Custer Const. Co. 230 Hillside Ave., Hillside, NJ 07205
1972 McCracken, M. % Custer Const. Co. 230 Hillside Ave., Hillside, NJ 07205
1973 McCracken, M. % Custer Const. Co. 230 Hillside Ave., Hillside, NJ 07205
1974 McCracken, M. % Custer Const. Co. 230 Hillside Ave., Hillside, NJ 07205
*155 1975 McCracken, M. % Custer Const. Co. 230 Hillside Ave., Hillside, NJ 07205
1976 McCracken, % Custer Const. Co. TTL 230 Hillside Ave., Hillside, NJ 07205
1977 McCracken, % Custer Const. Co. TTL 230 Hillside Ave., Hillside, NJ 07205
1978 McCracken, % Custer Const. Co. TTL 230 Hillside Ave., Hillside, NJ 07205
1979 Schnitzer, Miriam 230 Hillside Ave., Hillside, NJ 07205
1980 Schnitzer, Miriam 230 Hillside Ave., Hillside, NJ 07205
1981 Schnitzer, Miriam 230 Hillside Ave., Hillside, NJ 07205
1982 Schnitzer, Miriam 230 Hillside Ave., Hillside, NJ 07205
1983 Schnitzer, Miriam 230 Hillside Ave., Hillside, NJ 07205
1984 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1985 Miriam PO Box 150, Hillside, NJ 07205
1986 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1987 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1988 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1989 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1990 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1991 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1992 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1993 Schnitzer, Miriam PO Box 150, Hillside, NJ 07205
1994 Realty Ownership Ventures, Inc. 700 Boston Blvd., Sea Girt, NJ 08750