SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Winberry Realty Partnership v. Borough of Rutherford** (A-22/53-19) (083156)

**Argued January 19, 2021 -- Decided June 28, 2021**

**ALBIN, J., writing for a unanimous Court.**

In this civil rights action, the Court considers whether the Borough of Rutherford's Tax Collector is entitled to qualified immunity and, if not, whether the Borough may be liable for her actions. Plaintiffs allege (1) that the Tax Collector violated their clearly established constitutional and statutory right to redeem the tax sale certificate on their home before entry of a final foreclosure judgment; and (2) that the Borough is liable for the Tax Collector's violation of their right because the Tax Collector is the Borough's final policymaker in the area of tax sale certificate redemptions.

Plaintiffs fell into arrears on the taxes on their home in the Borough. To collect unpaid property taxes, a municipality may sell at public auction a tax sale certificate. The successful bidder agrees to pay the taxes due and may institute a foreclosure action if the property owner does not redeem the certificate within two years of the auction. The property owner has the right to redeem the certificate until barred by the judgment of the Superior Court. See N.J.S.A. 54:5-86; R. 4:64-6(b). Here, four years after buying the tax sale certificate on plaintiffs' home, the purchaser initiated foreclosure proceedings. The trial court ordered that "redemption shall be permitted up until entry of final judgment, including the whole of the last day upon which judgment is entered." (emphasis added).

After the date of redemption but before entry of final judgment, plaintiff John Winberry called the Tax Collector to determine the total amount needed to redeem the certificate. According to Winberry's deposition testimony, the Tax Collector told him that she "[didn't] have the time" to give him either the total amount or the per diem interest rate. Winberry testified that he then offered to pay an amount well over what he estimated to be the redemption amount and that the Tax Collector replied, "No. . . . [Y]ou've had years to pay this," and "I can't accept your check anymore."

When deposed, the Tax Collector acknowledged the right to redemption at any time before entry of a final foreclosure judgment, and that her computer software could calculate arrearages "within a matter of minutes." She testified that her policy as Tax Collector required that the property owner put the redemption request in writing and also stated that her policy was to contact the certificate holder to get the correct amount owed.

1

The day after plaintiffs attempted to redeem the certificate, the court entered the final foreclosure judgment. After costly legal proceedings, plaintiffs succeeded in having the foreclosure judgment overturned and reclaimed their property.

Plaintiffs brought this action under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, and 42 U.S.C. §§ 1983 and 1985, alleging that the Tax Collector and the Borough violated their constitutional, statutory, and common law rights to reclaim their property. The trial court granted summary judgment to defendants, finding that the Tax Collector was entitled to qualified immunity and the Borough derivative immunity. The Appellate Division reversed and reinstated the case against the Tax Collector but dismissed the Borough from the case, holding that plaintiffs failed to establish municipal liability because the Tax Collector's policy was not the Borough's policy. The Court granted certification regarding the Borough's liability, 240 N.J. 64 (2019), and the denial of qualified immunity to the Tax Collector, 241 N.J. 88 (2020).

**HELD:** The Court affirms the decision to deny the Tax Collector qualified immunity. Based on the summary judgment record, the Tax Collector's refusal to provide the redemption amount to plaintiffs because the request was not in writing or timely made was not objectively reasonable. The Court disagrees, however, that plaintiffs have not established the basis for municipal liability. The Tax Collector is the final policymaker on matters related to the redemption of tax sale certificates in the Borough. The Borough is liable if the Tax Collector violated the constitutional or statutory rights of plaintiffs.

1. To make out a CRA claim, plaintiffs must establish that: (1) the right of redemption is a substantive right conferred by the Tax Sale Law, N.J.S.A. 54:5-1 to -137, or the Constitution; (2) the Tax Collector deprived them of that right; and (3) the Tax Collector acted under color of law when she did so. Here, defendants concede that (1) and (3) are met. The issue is whether they deprived plaintiffs of the right of redemption. (pp. 20-21)

2. The Tax Sale Law clearly confers on plaintiffs a substantive right to redeem the tax sale certificate and reclaim their land. And the right to own and enjoy one's property without arbitrary interference by the State is enshrined in the New Jersey Constitution. In this case, the chancery court ordered that the redemption of the certificate be paid "to the Tax Collector." One of the essential duties of a municipal tax collector in the case of an outstanding tax sale certificate is to communicate to a property owner the amount necessary to redeem the certificate. A property owner cannot redeem a tax sale certificate if the tax collector will not tell him the redemption amount. (pp. 22-24)

3. Whether a public official is entitled to qualified immunity on summary judgment depends on (1) whether the evidence, viewed in the light most favorable to the plaintiff, establishes that the official violated the plaintiff's constitutional or statutory rights, and (2) whether the right allegedly violated was clearly established at the time of the officer's actions. Whether a right is clearly established is judged by a standard of objective

reasonableness. The ultimate question is this: was the law clearly established that when Winberry called and requested the redemption amount, the Tax Collector was obligated to provide that information promptly and to accept a redemption payment? (pp. 24-26)

4. When Winberry called the Tax Collector, a final foreclosure judgment had not yet been entered. The Tax Collector refused to provide the redemption amount even though she could calculate the arrearages within minutes. She told Winberry that she did not have the authority to accept his check, but both N.J.S.A. 54:5-86(a) and Rule 4:64-6(b) stated otherwise, as did the court's order. Although the Tax Collector testified that her policy required the property owner to provide a written redemption request, no law or regulation at the time mandated such a requirement. She stated that her policy was to contact the tax sale certificate holder to verify the amount owed, but she did not recall doing so. The Tax Collector withheld, or made no effort to secure, the information necessary for plaintiffs to vindicate their substantive right to reclaim their home. And she flatly refused to accept the redemption payment at a point when the right to redeem the tax sale certificate had not been cut off. The Tax Collector did not act in an objectively reasonable manner and therefore is not entitled to qualified immunity. (pp. 26-29)

5. Prudence dictates that a tax collector contact the tax certificate holder when a redemption figure is requested to determine the final redemption amount, and the certificate holder should know the amounts due and make that information immediately available to the tax collector upon request. (pp. 29-30)

6. A municipality may be accountable for the action of an official who possesses final authority to establish municipal policy and who exercises that authority in violation of a person's rights. An official need only have final policymaking authority in a particular area or on a particular issue of municipal business to be a final policymaker. (pp. 30-33)

7. Here, Caryn Miller was the "Department Head" of the Borough's Department of the Tax Collector, and, in that role, she served as the Borough's policymaker in the realm of tax redemption. The Tax Sale Law identifies the tax collector as the sole person with the authority to accept payment to redeem a tax sale certificate. N.J.S.A. 54:5-54. As the Borough's tax collector, Miller set the policy for the redemption of tax sale certificates. No other municipal official or body was empowered to set or veto the tax collector's redemption procedures. Because Miller spoke as a final policymaker for the Borough on matters of redemption, Miller's policy was the Borough's policy. On that basis, the Borough may be held liable for Miller's violation of the Tax Sale Law. (pp. 33-36)

**AFFIRMED in part; REVERSED in part. REMANDED to the Law Division.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-22/53 September Term 2019

083156

Winberry Realty Partnership,
John Winberry, Mary Lourdes Winberry,
Celeste Winberry, and Gregory Winberry,

Plaintiffs-Appellants/Cross-Respondents,

v.

Borough of Rutherford, and Caryn Miller,
in her official and individual capacities,

Defendants-Respondents/Cross-Appellants,

and

Stephen Krisch, in his individual capacity,

Defendant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| January 19, 2021 | June 28, 2021 |

Lawrence S. Lustberg argued the cause for
appellants/cross-respondents (Gibbons and Lite DePalma
Greenberg, attorneys; Lawrence S. Lustberg, Sylvia-
Rebecca Gutiérrez, and Bruce D. Greenberg, on the
briefs).

Kathy A. Kennedy argued the cause for
respondents/cross-appellants (Hanrahan Pack, attorneys;

Thomas B. Hanrahan, of counsel and on the briefs, and Kathy A. Kennedy, on the briefs).

Joseph A. Fischetti argued the cause for amicus curiae Consumers League of New Jersey (Lowenstein Sandler, attorneys; Joseph A. Fischetti, on the brief).

Daniel M. Ortner, of the California and Virginia bars, admitted pro hac vice, argued the cause for amicus curiae Pacific Legal Foundation (Pacific Legal Foundation, attorneys; Steven Simpson, of counsel, and Mark Miller, on the brief).

John C. Gillespie, argued the cause for amici curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (Parker McCay, attorneys; John C. Gillespie, on the brief).

Keith A. Bonchi argued the cause for amicus curiae Tax Collectors and Treasurers Association of New Jersey (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Keith A. Bonchi, of counsel and on the brief, and Elliott J. Almanza, on the brief).

Adam D. Greenberg argued the cause for amicus curiae National Tax Lien Association, Inc. (Honig & Greenberg, attorneys; Adam D. Greenberg, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

The right to enjoy and possess one's property -- free from arbitrary government interference -- has been deeply embedded in our laws from the beginning of our Republic. That fundamental principle is the subject of this case.

2

Plaintiffs fell into arrears on the real estate taxes on their home located in the Borough of Rutherford. In accordance with the New Jersey Tax Sale Law (Tax Sale Law), N.J.S.A. 54:5-1 to -137, the Borough sold a tax sale certificate to a purchaser, who paid the arrears. The sale of the certificate entitled the purchaser to charge interest on the outstanding taxes and to foreclose on the property if plaintiffs did not redeem the certificate in the manner provided by the statute. The Tax Sale Law required that, to redeem the certificate, plaintiffs pay the outstanding taxes, accumulated interest, and costs to the Borough's Tax Collector before the entry of a final foreclosure judgment.

Plaintiffs attempted to redeem the tax sale certificate before the entry of the final foreclosure judgment on their property, only to be turned away by the Tax Collector. As a result of the denial of their right of redemption, plaintiffs lost their home. After costly legal proceedings, plaintiffs succeeded in having the foreclosure judgment overturned and reclaimed their property.

In this action brought under the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2, and the Federal Civil Rights Act, 42 U.S.C. § 1983, plaintiffs allege before this Court that defendants -- the Tax Collector and the Borough -- violated their constitutional right of redemption and their statutory right of redemption under the Tax Sale Law, which in turn protected their right

3

to the enjoyment and possession of their home. The trial court granted summary judgment in favor of defendants, finding that the Tax Collector was entitled to qualified immunity on the ground that she did not violate the clearly established constitutional or statutory rights of plaintiffs.

The Appellate Division reversed and reinstated the case against the Tax Collector. It concluded that, viewing the evidence in the light most favorable to plaintiffs, the Tax Collector did not act in an objectively reasonable manner and therefore was not entitled to qualified immunity. The Appellate Division, however, dismissed the Borough from the case because plaintiffs failed to establish municipal liability under the civil rights laws -- that is, failed to establish that the Tax Collector's policy was endorsed or adopted by the Borough. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-94 (1978). In short, the Appellate Division held that the "[Tax Collector's] policy was not the Borough's policy."

We affirm the Appellate Division's decision to deny the Tax Collector qualified immunity. Based on the summary judgment record, the Tax Collector's refusal to provide the redemption amount to plaintiffs because the request was not in writing or timely made was not objectively reasonable. We disagree, however, that plaintiffs have not established the basis for municipal liability. The Tax Collector is the final policymaker on matters related to the

4

redemption of tax sale certificates in the Borough, and therefore, under Monell, the Borough is liable if the Tax Collector violated the constitutional or statutory rights of plaintiffs in this case.

We thus affirm in part and reverse in part the judgment of the Appellate Division and remand to the Law Division for proceedings consistent with this opinion.

I.

A short primer on tax sale certificates will be helpful to understand the procedural and factual history of this case.

When real estate taxes fall into arrears, the municipality receives "a continuous lien on the land" for the delinquent taxes as well as for "all subsequent taxes, interest, penalties and costs of collection." N.J.S.A. 54:5-6 (eff. May 12, 1994);[1] see also N.J.S.A. 54:5-7 to -8; accord Simon v. Cronecker, 189 N.J. 304, 318 (2007). To collect the unpaid taxes, the municipality may sell at public auction a tax sale certificate. N.J.S.A. 54:5-31. "The successful bidder on a tax sale certificate agrees to pay to the municipality the taxes or assessments due on the property, as advertised . . . ." Simon, 189 N.J. at 319 (citing N.J.S.A. 54:5-31 to -32, -46). The issuance of

---

[1] An amendment to N.J.S.A. 54:5-6 in 2016 made minor changes to the quoted language. See L. 2016, c. 5, § 8.

the tax sale certificate functions as "a conditional conveyance of the property to the purchaser, subject to a person with an interest in the property having the right to redeem the certificate, as prescribed by [N.J.S.A. 54:5-54]." Id. at 318 (citing N.J.S.A. 54:5-31 to -32, -46). "[I]f the property owner does not redeem the tax certificate within two years of the auction, the holder may acquire title to the property free and clear by 'institut[ing] an action to foreclose the right of redemption' against anyone with an interest in the land." Id. at 319 (second alteration in original) (citing N.J.S.A. 54:5-86 to -87).

However, if the property owner redeems the certificate, the tax sale certificate holder "is entitled to reimbursement for all taxes and assessments paid on the property, as well as accrued interest and related costs." Ibid. (citing N.J.S.A. 54:5-58 to -60). The tax sale certificate holder has the opportunity to file an affidavit with the tax collector setting forth the amount due for redemption. See N.J.S.A. 54:5-60 to -62. The property owner has "the right to redeem the tax sale certificate . . . 'until barred by the judgment of the Superior Court.'" Simon, 189 N.J. at 319 (quoting N.J.S.A. 54:5-86); see also R. 4:64-6(b) ("Redemption may be made at any time until the entry of final judgment . . . .").

6

II.

A.

The following factual and procedural history is not in dispute.

Winberry Realty Partnership was formed by siblings John, Celeste, Gregory, and Mary Lourdes Winberry. The Partnership owned a single-family home in Rutherford, New Jersey, which was held for the benefit of the Winberrys' sister who is cognitively impaired. In 2001, the Partnership failed to make property tax payments on the home. As a result, in October 2002, the Tax Collector for the Borough of Rutherford, Caryn Miller, sold a tax sale certificate on the Winberry property to American Tax Funding, LLC (American Tax).

Almost four years later, with the tax sale certificate unredeemed, American Tax notified the Partnership of its intent to foreclose on the property. American Tax also requested that, before accepting a redemption check, the Tax Collector contact it and verify the amount due on the tax sale certificate as well as the allowable expenses.

In November 2006, American Tax filed an action in the Chancery Division to foreclose on the Winberry property. John Winberry (Winberry), acting pro se, filed an answer to the foreclosure complaint for the Partnership. The chancery court, however, struck the answer because Winberry failed to

7

attend case management conferences, and therefore the matter proceeded uncontested.

On May 5, 2008, the court entered an order setting the amount to redeem the tax sale certificate at "$78,352.74, which amount includes subsequent taxes, interest, together with lawful interest on said sum from January 31, 2008, together with costs of suit to be taxed in the sum of $1,157.50, which sum includes a counsel fee of $500.00."[2]  The court set the date of redemption as June 19, 2008, and the place of redemption as the Rutherford Tax Collector's Office.  Additionally, the court ordered that "<u>redemption shall be permitted up until entry of final judgment</u>, including the whole of the last day upon which judgment is entered."  (emphasis added); <u>see</u> N.J.S.A. 54:5-54, -86.  On June 19, 2008, the Tax Collector executed a Certification of Non-Redemption affirming that the Partnership had not redeemed the tax sale certificate as of that date.

On the afternoon of July 23, 2008 -- before entry of final judgment -- Winberry called the Tax Collector to determine the total amount needed to redeem the tax sale certificate.  The Tax Collector declined to provide the requested amount.  That same day, American Tax moved for entry of a final

---

[2]  American Tax filed a certification with the chancery court averring the amount owed to redeem the tax sale certificate.

8

foreclosure judgment.[3]  The next day, the chancery court entered judgment,

and American Tax became the owner of the Rutherford property.

The Partnership retained counsel and moved to vacate the judgment.

Nearly a year later, on July 9, 2009, the chancery court vacated the foreclosure

judgment, and the Partnership redeemed the tax sale certificate and regained

ownership of the property.[4]

B.

Plaintiffs, the Winberry siblings and the Partnership, filed a complaint in

the Law Division, asserting civil rights claims under the New Jersey CRA and

42 U.S.C. §§ 1983 and 1985, as well as other claims, against defendants

Borough of Rutherford and its Tax Collector, Caryn Miller, in her individual

and official capacities.[5]  Plaintiffs allege that the Tax Collector's failure to

---

[3]  ATFH Real Property, LLC succeeded to American Tax's interest in the foreclosure action.  For convenience, we continue to refer to the plaintiff in that litigation as American Tax.

[4]  The chancery court vacated the foreclosure judgment because John Winberry did not have authority from his siblings to represent the interests of the Partnership.

[5]  The complaint also asserted claims that the Law Division dismissed for lack of timely notice and that are not the subject of this appeal:  a tort claim against the Borough for negligent supervision and a tort claim against the Borough and the Tax Collector for intentional infliction of emotion distress.  The Law Division also dismissed the claims against Stephen Krisch of the Office of Foreclosure within the Administrative Office of the Courts (the original

9

provide the redemption amount to Winberry, upon his request and before entry of the foreclosure judgment, violated their constitutional, statutory, and common law rights to reclaim their property.[6] Plaintiffs sought compensatory, punitive, and emotional-distress damages, as well as attorney's fees, interest, and costs.

The issue of whether the Borough's Tax Collector is entitled to qualified immunity on plaintiffs' civil rights claims comes before us on defendants' motion for summary judgment. At this procedural stage, "we are required not only to view the evidence in the light most favorable to [plaintiffs], but also to draw all reasonable inferences in [plaintiffs'] favor that are supported by the summary judgment record." Baskin v. Martinez, 243 N.J. 112, 129 (2020) (citing Gormley v. Wood-El, 218 N.J. 72, 86 (2014)). In canvassing the record, including the deposition testimony, answers to interrogatories, and pleadings, we now give plaintiffs the benefit of their "best case." See ibid. (quoting Gormley, 218 N.J. at 86).

---

caption of this case listed Krisch's first name as "Steven," which is a misspelling that we have corrected).

[6] Whether plaintiffs have sufficiently pled a claim against the Borough under the New Jersey CRA is not an issue before us in this appeal.

C.

According to the deposition testimony of John Winberry, on the afternoon of July 23, 2008, he had the funds to pay off the estimated amount necessary to redeem the tax sale certificate held by American Tax. When he called the Tax Collector and asked her for the precise redemption amount, she responded, "I don't have the time to give you the total amount. Can't do it today." When Winberry asked for the per diem interest rate so that he could calculate the interest accrued since the June 19 redemption date, the Tax Collector stated, "I don't have time for that." Winberry then offered to pay an amount well over the redemption amount that he estimated was necessary to redeem the tax sale certificate. The Tax Collector replied, "No. . . . [Y]ou've had years to pay this," and "I can't accept your check anymore." The Tax Collector told Winberry that she did not have "authority to accept" payment because the court-ordered redemption date had passed, and she would not accept a check from him.[7]

In her deposition, the Tax Collector acknowledged that a property owner has the right to redeem a tax sale certificate at any time before entry of a final

---

[7] In her interrogatory responses, the Tax Collector admitted that when Winberry called, she advised him that she could not give the amount needed to redeem the tax sale certificate at that time.

foreclosure judgment and that her office's computer software could calculate the arrearages, including interest owed, "within a matter of minutes." She stated, however, that her policy as Tax Collector required that the property owner put the redemption request in writing. She also stated that her policy was to contact the tax sale certificate holder to get the correct amount owed, a point verified by the cashier of her office.

The Tax Collector could not recall whether she told Winberry that a request for the redemption amount had to be in writing or whether she attempted to verify with American Tax the amount owed to redeem the tax sale certificate.

## D.

We need not spend much time on the procedural history that is not germane to this appeal. Two previous appeals preceded the present matter. In the first appeal, the Appellate Division reversed the trial court's dismissal of plaintiffs' complaint based on alleged discovery violations. In the second appeal, the Appellate Division reversed the trial court's grant of summary judgment in favor of the Tax Collector on the basis of qualified immunity and the Borough on the basis of derivative immunity and remanded to the trial court to permit the completion of the depositions of witnesses and parties.

12

E.

After completion of discovery, the trial court again found that the Tax Collector "performed her duties . . . in an objectively reasonable manner and therefore enjoys qualified immunity." Based on that finding, the court determined that the Borough was immune as well. In particular, the court was not persuaded that the Tax Collector's "informal policy to check with the lienholder's attorney or representative before the generation of a payoff figure rises to the level of an unreasonable, intentional, or malicious action" that would justify stripping her of qualified immunity. Nor did that informal policy, in the court's view, represent "a Borough policy which has systematically resulted in the deprivation of civil rights." Accordingly, the court granted summary judgment in favor of defendants and dismissed plaintiffs' complaint.

F.

In an unpublished opinion, the Appellate Division reversed the Law Division's grant of qualified immunity to the Tax Collector but affirmed the dismissal of plaintiffs' claims against the Borough.[8]

---

[8] The Appellate Division also affirmed the Law Division's denial of plaintiffs' cross-motion for partial summary judgment and plaintiffs' motion to compel discovery. Those rulings are not at issue on appeal.

The Appellate Division determined that the trial court "seemingly applied a mistaken notion" about the grant of qualified immunity to a public official. It held that the Tax Collector had a "statutory, ministerial obligation to provide the information Winberry requested without delay or consultation with the purchasers of the tax sale certificate." According to the Appellate Division, the Tax Collector's "informal" or "discretionary policy" not to inform the property owner of the amount necessary to redeem the tax sale certificate until after conferring with the certificate holder violated the Partnership's right of redemption under N.J.S.A. 54:5-54 and the chancery court's order. Moreover, it decided that the Tax Collector's refusal to provide Winberry with the redemption amount when her computer could produce the result in minutes was "objectively unreasonable."

The Appellate Division noted that if "[the Tax Collector] refused to timely redeem the tax sale certificate -- not during the specific phone call, but at all -- . . . then the doctrine of qualified immunity would not be available to her." In the court's view, "once the Partnership elected to exercise the legal right to redemption, any obstruction created by a public official's failure to fulfill her ministerial duties was inherently unreasonable." Based on a review of the summary judgment record in the light most favorable to plaintiffs, the Appellate Division denied the Tax Collector qualified immunity on the civil

14

rights claims and concluded that the disputed material facts must be left to a factfinder.[9]

On the other hand, the Appellate Division ruled that the Tax Collector, not the Borough, deprived plaintiffs of the right of redemption and that the Borough could not be held vicariously liable for the Tax Collector's policy under either § 1983 or the CRA. It concluded that "[the Tax Collector's] policy was not the Borough's policy." Accordingly, the court affirmed the Law Division's grant of summary judgment in favor of the Borough.

We granted plaintiffs' petition for certification "limited to . . . the issue of whether the tax collector has final policymaking authority such that the Borough may be liable for her actions." 240 N.J. 64 (2019). We also granted defendants' cross-petition for certification challenging the Appellate Division's denial of qualified immunity to the Tax Collector. 241 N.J. 88 (2020). We granted the motions of the Consumers League of New Jersey; Pacific Legal Foundation; New Jersey State League of Municipalities and New

_____

[9] The Appellate Division and most of the advocates before our Court were under the mistaken impression that at the time of the events in this case, the redemption statute, N.J.S.A. 54:5-54, required a written request for the redemption amount. The writing-requirement provision of the redemption statute, however, was not enacted until 2010, and therefore was not the law in 2008 at the time that Winberry spoke with the Tax Collector. Compare N.J.S.A. 54:5-54 (eff. Aug. 5, 1997) (L. 1997, c. 190, § 4), with N.J.S.A. 54:5-54 (eff. Jan. 18, 2010) (L. 2009, c. 320, § 10).

15

Jersey Institute of Local Government Attorneys; Tax Collectors and Treasurers Association of New Jersey; and National Tax Lien Association, Inc. to participate as amici curiae.

## III.

## A.

Plaintiffs claim that the Tax Collector is not entitled to qualified immunity because she violated their clearly established constitutional and statutory right to redeem the tax sale certificate and retain their home before entry of a final foreclosure judgment. Plaintiffs contend that the Tax Collector's actions -- refusing to provide Winberry the redemption amount and stating she could not accept payment, even an overpayment, after the redemption date -- directly contravened the Tax Sale Law and were objectively unreasonable. Plaintiffs maintain that even if the Tax Collector had an informal policy of verifying with the tax sale certificate holder the redemption amount due, she did not do so, and, in any event, an indefinite delay in conducting a due diligence verification could not defeat plaintiffs' right to timely redeem the certificate.

Plaintiffs further assert that, under state law, the Tax Collector is the Borough's final policymaker in the area of tax sale certificate redemptions. From that premise, plaintiffs reason, under the jurisprudence interpreting the

16

CRA and 42 U.S.C. § 1983, the Borough is liable for the Tax Collector's violation of their constitutional rights and statutory rights, specifically those conferred by the Tax Sale Law.

The Consumers League of New Jersey and Pacific Legal Foundation advance positions in support of plaintiffs' arguments. They also collectively contend that the reasonableness of the Tax Collector's refusal to provide the redemption amount must be assessed against plaintiffs' clearly established statutory right to redeem the tax sale certificate before the entry of final judgment and the chancery court's order echoing that right.

B.

Defendants argue that the Tax Collector is entitled to qualified immunity because her conduct during the July 23, 2008 telephone call with Winberry was "objectively reasonable." Defendants explain that the redemption amount could not be provided over the telephone because the Tax Collector's practice was "to request that [the property owner] put the redemption request in writing" and to first consult with the tax sale certificate holder before giving a final redemption calculation. Defendants assert that plaintiffs did not have a clearly established right to demand, without delay, a redemption figure over the telephone given that the Tax Collector had to confirm the amount owed with the tax sale certificate holder. According to defendants, even had the Tax

17

Collector provided to Winberry the per diem rate to calculate the amount of interest due on the certificate since the June 19, 2008 redemption date, that would not have accounted for the costs and fees due to the certificate holder.

Additionally, defendants maintain that the Tax Sale Law barred the Tax Collector from accepting an overpayment from plaintiffs and that "it would have been perfectly reasonable for [her]" to have assumed that a final foreclosure judgment already had been entered after the June 19 redemption date had passed. Defendants contend that even if the Tax Collector's practices and understanding of the law were mistaken, she still acted in an objectively reasonable manner.

Defendant Borough further argues that if the Tax Collector's policy deprived the Winberrys of their right of redemption under the Tax Sale Law, that policy was never authorized by and cannot be attributed to the Borough. According to the Borough, the Tax Collector carried out ministerial duties in enforcing the Tax Sale Law, guided by the regulations of New Jersey's Department of Community Affairs, and "is not the final policymaker in the area of tax redemptions."

Amici New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys; Tax Collectors and Treasurers Association of New Jersey; and National Tax Lien Association, Inc. argue

18

collectively that the Tax Collector's policy of contacting the tax sale certificate holder was not only reasonable, but also judicially mandated, citing <u>Schnitzer v. Rinderer</u>, 17 N.J. Tax 136 (Tax 1998), <u>aff'd</u>, 318 N.J. Super. 322 (App. Div. 1999). The League of Municipalities and Institute of Local Government Attorneys advance two significant issues not raised by defendants. They assert that plaintiffs have pled only a federal civil rights claim -- not a CRA claim -- against the Borough, and that 42 U.S.C. § 1983 does not authorize a cause of action to vindicate a violation of New Jersey's Tax Sale Law. Amici also assert that nothing in the record suggests a basis to support a federal due process violation.

## IV.

We granted certification on two issues: whether the Tax Collector is entitled to qualified immunity on plaintiffs' civil rights claims and whether the Tax Collector acted as the Borough's final policymaker on matters relating to the redemption of tax sale certificates. The resolution of those issues will determine whether the Tax Collector and the Borough face potential liability on plaintiffs' civil rights claims.

Amici League of Municipalities and Institute of Local Government Attorneys have raised issues that were not pressed by defendants or developed before the trial court or Appellate Division concerning whether plaintiffs have

19

pled a CRA claim against the Borough and whether plaintiffs have a basis for a federal due process claim against defendants. Our customary practice is not to address issues raised for the first time by amici curiae on appeal to this Court. In re Request to Modify Prison Sentences, 242 N.J. 357, 396 (2020). Those issues must be developed by the parties in the appropriate forum. Therefore, for our purposes here, we will proceed as though there is a properly pled CRA claim against the Borough and a valid federal due process claim against defendants.

V.

A.

We first address whether the Borough of Rutherford's Tax Collector is entitled to qualified immunity in this civil rights action, which alleges that she unlawfully thwarted plaintiffs' right to redeem the tax sale certificate and save their home from foreclosure. We begin by discussing the nature of the right at issue and then turn to the defense of qualified immunity asserted by defendants.

The primary focus of plaintiffs' claims is the alleged failure of the Tax Collector to adhere to the provisions of the Tax Sale Law. That law allowed plaintiffs to pay off the accumulated tax arrearages on their property by

20

redeeming the tax sale certificate held by American Tax before entry of a final judgment of foreclosure.  See N.J.S.A. 54:5-54, -86(a).

Plaintiffs' cause of action is mostly grounded in the CRA.  N.J.S.A. 10:6-2(c) provides that "[a]ny person who has been deprived of . . . any substantive rights, privileges or immunities secured by the Constitution or laws of this State . . . by a person acting under color of law" may bring an action for damages.  (emphasis added).  To make out a CRA claim, plaintiffs must establish that:  (1) the right of redemption -- in essence, the right to reclaim one's home -- is a substantive right conferred by the Tax Sale Law or the Constitution; (2) the Tax Collector deprived them of that right; and (3) the Tax Collector was "acting under color of law" when she did so.  See Tumpson v. Farina, 218 N.J. 450, 473 (2014) (citing N.J.S.A. 10:6-2(c)).

Defendants do not contest that the right of redemption confers on plaintiffs a substantive right -- the right to maintain possession of their home, provided that plaintiffs complied with the dictates of the Tax Sale Law.  Nor do they contest that the Tax Collector was acting under color of law during her interaction with Winberry.  The issue is whether defendants deprived plaintiffs of the right of redemption.

21

B.

One of the important purposes of the Tax Sale Law "is to give the property owner the opportunity to redeem the [tax sale] certificate and reclaim his land." Simon, 189 N.J. at 319. A property owner has "the right to redeem the tax sale certificate at any time before the final date for redemption set by the court," and that right of redemption continues "until barred by the judgment of the Superior Court." Ibid. (first citing N.J.S.A. 54:5-54; and then quoting N.J.S.A. 54:5-86(a)). Likewise, Rule 4:64-6(b) provides that "[r]edemption may be made at any time until the entry of final judgment." Additionally, in accordance with the applicable statutes and court rule, the Chancery Division's redemption order in this case specifically provided that "redemption shall be permitted up until entry of final judgment, including the whole of the last day upon which judgment is entered."

At the time that Winberry made his telephone call to the Tax Collector, the Tax Sale Law did not require that he put his request for the redemption amount in writing. See N.J.S.A. 54:5-54 (eff. Aug. 5, 1997) (L. 1997, c. 190, § 4). Later, the Legislature amended N.J.S.A. 54:5-54 to include a writing requirement: "A request for a redemption calculation shall be made in writing to the tax collector." L. 2009, c. 320, § 10. Therefore, the Tax Collector's

purported informal policy requiring requests for redemption calculations to be in writing was not mandated by the Tax Sale Law in 2008.

The Tax Sale Law ensures "the delinquent property owner's right to fair treatment in the collection of [delinquent property] taxes." Varsolona v. Breen Cap. Servs. Corp., 180 N.J. 605, 622 (2004). The equitable right of redemption also serves to "protect property owners from forfeiting their homes" when they are able to pay all outstanding taxes, interests, and various costs and expenses before entry of final judgment. Simon, 189 N.J. at 319, 322 n.10; see also N.J.S.A. 54:5-58 to -62, -97.1. Notably, the property owner whose home is the subject of a foreclosure judgment in favor of a tax sale certificate holder faces the loss of all equity in the home. See, e.g., Simon, 189 N.J. at 313-14.

Importantly, as well, "the certificate holder's interest is subordinate to the property owner's right of redemption," id. at 319-20 (citing N.J.S.A. 54:5-54); the purchase of a tax sale certificate "does not divest the delinquent owner of his title to the land," Township of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 4 (App. Div. 1988).

The Tax Sale Law clearly confers on plaintiffs a substantive right to redeem the tax sale certificate and "reclaim [their] land." See Simon, 189 N.J. at 319. Indeed, few rights are more well-established than the right to own and

enjoy one's property without arbitrary interference by the State.  That fundamental right is enshrined in our State Constitution.  See N.J. Const. art. I, ¶ 1 ("All persons . . . have certain natural and unalienable rights, among which are those . . . of acquiring, possessing, and protecting property . . . ."); see also Harz v. Borough of Spring Lake, 234 N.J. 317, 333 (2018) ("Here, the nature of the substantive right at issue -- a property right -- is clearly identifiable.").

In this case, the chancery court ordered that the redemption of the tax sale certificate be paid "to the Tax Collector" "at the Office of the Tax Collector of the Borough of Rutherford."  See N.J.S.A. 54:5-98 ("[T]he court may order that the redemption shall be made to the tax collector of the municipality at his official office during business hours . . . .").

One of the essential duties of a municipal tax collector is to communicate to a property owner the amount of taxes owed to the municipality, and, in the case of an outstanding tax sale certificate, the amount necessary to redeem the certificate.  See N.J.S.A. 54:5-54.  Obviously, a property owner cannot redeem a tax sale certificate if the tax collector cannot or will not tell him the redemption amount.

## C.

The Tax Collector has asserted the defense of qualified immunity.  "The doctrine of qualified immunity generally protects government officials from

24

civil liability for discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Baskin, 243 N.J. at 127 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When applicable, qualified immunity shields public officials from lawsuits brought under both our federal and state civil rights statutes.  See Brown v. State, 230 N.J. 84, 97-98 (2017).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation'"; it is "an immunity from suit rather than a mere defense to liability."  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223, 236-43 (2009).  "[Q]ualified immunity ordinarily is a question of law to be decided by the court."  Baskin, 243 N.J. at 128 (citing Brown, 230 N.J. at 98-99).  In reviewing a defendant public official's application for qualified immunity at the summary judgment stage, the court must view the evidence and all reasonable inferences drawn from the evidence "in the light most favorable to" the plaintiff who claims that the official violated his rights.  Id. at 129 (citing Gormley, 218 N.J. at 86).

In short, whether a public official is entitled to qualified immunity on summary judgment depends on "(1) whether the evidence, viewed in the light most favorable to the plaintiff, establishes that the official violated the

25

plaintiff's constitutional or statutory rights, and (2) whether the right allegedly violated was 'clearly established' at the time of the officer's actions." Id. at 128 (citing Saucier, 533 U.S. at 201-02). Whether a right is "clearly established" is judged by a standard of objective reasonableness. Ibid. "In other words, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right.'" Ibid. (first alteration in original) (quoting Gormley, 218 N.J. at 113).

The ultimate question in determining whether the Tax Collector is entitled to qualified immunity is this: was the law clearly established that when Winberry called and requested the amount necessary to redeem the tax sale certificate, the Tax Collector was obligated to provide that information promptly and to accept a redemption payment?

## D.

Viewing the evidence in the light most favorable to plaintiffs and guided by the clear dictates of the Tax Sale Law, we conclude, as did the Appellate Division, that the Tax Collector did not act in an objectively reasonable manner, and therefore she is not entitled to qualified immunity. We come to that conclusion for the following reasons.

Despite the fact that the chancery court had set the redemption date as June 19, 2008, its order specifically provided, in accordance with N.J.S.A.

26

54:5-86(a) and <u>Rule</u> 4:64-6(b), that "redemption shall be permitted up until entry of final judgment, including the whole of the last day upon which judgment is entered." Generally, "equity abhors a forfeiture," <u>see</u> <u>Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.</u>, 100 N.J. 166, 182 (1985), and that axiom perhaps has no greater force than when the forfeiture at issue is a home.

Under the Tax Sale Law, the Tax Collector's duty was to facilitate, not thwart, the redemption of the tax sale certificate so that plaintiffs could save their home. After the redemption date had passed, the last remaining step was the entry of a final judgment of foreclosure. <u>See</u> N.J.S.A. 54:5-86(a); <u>R.</u> 4:64-6(b). The point of no return for plaintiffs was the day of the final foreclosure judgment, and therefore they had to redeem the tax sale certificate before the close of that day. Time was of the essence.

On July 23, 2008, when Winberry called the Tax Collector and spoke with her, a final foreclosure judgment had not yet been entered. Winberry needed to know the amount owed to redeem American Tax's tax sale certificate in order to cut a check and reclaim his family's home. He averred that he had the monies to do so.

But, according to Winberry, when he asked the Tax Collector for the redemption amount, she responded, "Can't do it today." When he asked for

the per diem interest rate since June 19, so that he could calculate the amount owed, she responded, "I don't have time for that." When he offered to pay an amount greater than the likely redemption amount, she responded, "No. . . . [Y]ou've had years to pay this." She made those comments despite her later concession that her office computer could calculate the arrearage amount due, including interest, within minutes. She told Winberry that she did not have the authority to accept his check because the redemption date had passed, but both N.J.S.A. 54:5-86(a) and Rule 4:64-6(b) clearly stated otherwise, as did the chancery court's order. See also Simon, 189 N.J. at 319.

Although the Tax Collector testified in her deposition that her office policy required the property owner to provide a written redemption request, no law or regulation at the time mandated such a requirement, nor apparently did she communicate that requirement to Winberry. Last, she stated that her policy was to contact the tax sale certificate holder to verify the amount owed, but she did not recall ever making an effort to do so on the afternoon of July 23.

In short, viewing the summary judgment record in the light most favorable to plaintiffs, the Tax Collector left Winberry, a property owner desperate to save his family's home, with no means to exercise his clearly established statutory right to redeem the tax sale certificate. The Tax

28

Collector, in essence, held the keys to plaintiffs' home. She withheld, or made no effort to secure, the information necessary for plaintiffs to vindicate their substantive right to reclaim their home under the Tax Sale Law. Additionally, she flatly refused to accept the redemption payment at a point when the right to redeem the tax sale certificate had not been cut off. Under those circumstances, and under the governing standard of review, we determine that the Tax Collector did not act in an objectively reasonable manner and therefore is not entitled to qualified immunity.

In reaching that determination, we do not suggest that a tax collector should not communicate with the tax sale certificate holder to ensure the correctness of the redemption figure.[10] Indeed, prudence dictates that the tax collector contact the tax certificate holder to determine any additional interest or costs due to redeem the tax sale certificate since the redemption date set by the chancery court's order.[11]

---

[10] We note that nothing in the Tax Court's decision in Schnitzer, which is cited by defendants, suggested a tax collector could categorically refuse to allow a property owner to redeem a tax sale certificate, as final judgment loomed, because of the tax collector's or certificate holder's refusal to timely ascertain the amount due. See 17 N.J. Tax at 143-51.

[11] If the tax sale certificate holder advises the tax collector orally or by electronic means that additional interest and costs have been incurred, the certificate holder should promptly file an affidavit afterwards to verify the redemption amount in accordance with N.J.S.A. 54:5-60 to -62.

But, given that a property owner has a statutory right to redeem the certificate until the day of entry of the foreclosure judgment, the certificate holder should know the amounts due and make that information immediately available to the tax collector upon request.  An inexcusable delay in providing information to a property owner attempting to redeem the certificate in accordance with the dictates of the Tax Sale Law cannot justify the denial of the property owner's right of redemption.[12]

VI.

A.

We next address the Borough's potential liability on the CRA and § 1983 claims.

The legal principles governing the liability of a municipality under the CRA and § 1983 are essentially the same.  See, e.g., Ingram v. Township of

---

[12]  Before the trial court and the Appellate Division, and even in the cross-petition and response by the parties, the issue of qualified immunity was cast broadly, without distinguishing between the CRA and 42 U.S.C. § 1983 claims.  Amici curiae League of Municipalities and Institute of Local Government Attorneys have challenged the basis for a § 1983 claim, noting that § 1983 vindicates only rights guaranteed by the Federal Constitution and federal law -- not state law.  We will not, in the first instance, address whether plaintiffs have a legitimate federal due process claim or whether the Tax Collector would be entitled to qualified immunity on such a claim.  It is enough, for our purposes here and on the record before us, to recognize the presence of a substantive property right conferred by the Tax Sale Law that may be vindicated under the CRA.

30

Deptford, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); see also Tumpson, 218 N.J. at 474 ("[O]ur State Civil Rights Act is modeled off of the analogous Federal Civil Rights Act, 42 U.S.C. § 1983, and . . . . [t]he interpretation given to parallel provisions of Section 1983 may provide guidance in construing our Civil Rights Act.").

Under the CRA and § 1983, a municipality can be held liable only if it causes harm through "the implementation of 'official municipal policy.'" Lozman v. City of Riviera Beach, 585 U.S. ___, 138 S. Ct. 1945, 1951 (2018) (quoting Monell, 436 U.S. at 691); see also Stomel v. City of Camden, 192 N.J. 137, 145 (2007). A municipality is not legally accountable solely because of the acts of one of its employees -- acts that do not represent official policy -- under the doctrine of respondeat superior. Stomel, 192 N.J. at 145 (citing, e.g., Monell, 436 U.S. at 690-91); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the municipality from acts of [its] employees . . . .").

Municipalities, however, delegate authority to officials "whose edicts or acts may fairly be said to represent official policy," and in those circumstances municipal liability may attach. Stomel, 192 N.J. at 145 (quoting Monell, 436 U.S. at 694); see also Pembaur, 475 U.S. at 480 ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers

31

under appropriate circumstances.").  In short, "a municipality may be accountable for the action of an official who 'possesses final authority to establish municipal policy'" and who exercises that authority in violation of a person's rights.  Besler v. Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist., 201 N.J. 544, 565 (2010) (quoting Stomel, 192 N.J. at 146).

"Whether 'an official ha[s] final policymaking authority is a question of state law.'"  Id. at 566 (alteration in original) (quoting Stomel, 192 N.J. at 146).  The relevant inquiry is whether the official violated a person's rights while exercising "final policymaking authority" on behalf of the municipality.  See ibid. (quoting Stomel, 192 N.J. at 146).

For example, in Stomel, we concluded that the Mayor of Camden was the city's "policy-maker" when he removed the municipal public defender allegedly in retaliation for whistleblowing activity.  192 N.J. at 141-42, 151-53.  Although the City Council had veto power over the Mayor's removal decisions, we explained that "the Council effectively ratified the Mayor's action when it did not exercise [that] power," and therefore municipal liability attached.  Id. at 153.

Similarly, in Besler, we determined that a school board president acted as a "final policymaker" when he silenced an aggrieved parent during the public comment period of a school board proceeding.  201 N.J. at 554-55, 566-

32

68. We added that even if the other board members had the authority to overrule the school board president, "they obviously acquiesced in the decision to silence [the parent]." Id. at 567. We also noted that an "official need only have final policy-making authority in 'a particular area[] or on a particular issue' of municipal business to be [a] final policymaker." Ibid. (first alteration in original) (quoting McMillian v. Monroe County, 520 U.S. 781, 785 (1997)).

Cases in which courts have found local government officials to be final policymakers for § 1983 purposes abound. See, e.g., McGreevy v. Stroup, 413 F.3d 359, 367-69 (3d Cir. 2005) (school superintendent); Sunkett v. Misci, 183 F. Supp. 2d 691, 710-11 (D.N.J. 2002) (city attorney); Hutchison v. City of Huntington, 479 S.E.2d 649, 662-63 (W. Va. 1996) (city planning supervisor); Dempsey v. Johnson, 69 N.E.3d 236, 251-52 (Ill. App. Ct. 2016) (village clerk); Flanders v. Maricopa County, 54 P.3d 837, 846-47 (Ariz. Ct. App. 2002) (sheriff); Sudul v. City of Hamtramck, 562 N.W.2d 478, 481 (Mich. Ct. App. 1997) (police chief).

## B.

In light of our jurisprudence and precedents under the CRA and § 1983, the Tax Collector was clearly a final policymaker for the Borough of Rutherford when she denied plaintiffs the opportunity to redeem the tax sale

certificate on July 23, before the entry of a foreclosure judgment on their property the next day.

The position of municipal tax collector is a creature of statute. Depending on the form of government of the municipality, the tax collector is appointed by the municipality's "governing body or chief executive," N.J.S.A. 40A:9-141, for a term of four years, N.J.S.A. 40A:9-142. A tax collector who acquires tenure or who receives a tax collector certificate and has been reappointed after serving for no less than four consecutive years may be removed "only for good cause." N.J.S.A. 40A:9-145.8(a) to (b).

Caryn Miller was the "Department Head" of the Borough's Department of the Tax Collector,[13] and, in that role, she served as the Borough's policymaker in the realm of tax redemption. A public official, such as Miller, can be a final policymaker even though her authority is limited to "a particular area" or "'a particular issue' of municipal business." See Besler, 201 N.J. at 567 (quoting McMillian, 520 U.S. at 785).

The Tax Sale Law identifies the tax collector as the sole person with the authority to accept payment to redeem a tax sale certificate. N.J.S.A. 54:5-54.

---

[13] Department of Tax Collector, Borough of Rutherford, N.J., https://www.rutherfordboronj.com/departments/tax-collector (last visited June 3, 2021).

34

In her role as the Borough's tax collector, Miller set the policy for the redemption of tax sale certificates. No other municipal official or body was empowered to set or veto the tax collector's redemption procedures.

By her own account, Miller had implemented unwritten policies and procedures governing redemption during her tenure as tax collector. For instance, even before the practice was directly authorized by statute, Miller testified that she required a property owner seeking a redemption calculation to submit that request in writing. Additionally, before giving a redemption figure, Miller stated it was her policy to check with the tax sale certificate holder to ensure the correctness of the calculation. Miller also testified that she devised a procedure to advise nonresponsive lienholders in writing that she would "assume" the correctness of her calculation of the redemption amount unless they objected.

In the realm of municipal government, the tax collector is the final word on issues of tax redemption. That the tax collector is subject to regulations promulgated by the Department of Community Affairs does not make the tax collector any less a final policymaker than the mayor, who is subject to that Department's regulations, e.g., N.J.A.C. 5:30-13.11(e), or a chief of police, who is subject to rules promulgated by the Attorney General, see O'Shea v. Township of West Milford, 410 N.J. Super. 371, 383 (App. Div. 2009)

("[Attorney General] guidelines, directives or policies cannot be ignored . . . : they are binding and enforceable on local law enforcement agencies . . . .").

Because Miller spoke as a final policymaker for the Borough on matters of redemption, Miller's policy was the Borough's policy. On that basis, the Borough may be held liable for Miller's violation of the Tax Sale Law under the CRA or for a violation of an applicable federal constitutional right under § 1983. See Besler, 201 N.J. at 565-66.

## VII.

We affirm that part of the judgment of the Appellate Division holding that Miller was not entitled to qualified immunity, and we reverse that part of the judgment of the Appellate Division holding that the Borough could not be found liable under the CRA or § 1983 for the conduct of its tax collector.

We remand to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.

36